**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

HAILE M. LAREBO,
Plaintiff-Appellant,

v.                                                        No. 98-2234

CLEMSON UNIVERSITY,
Defendant-Appellee.

Appeal from the United States District Court
for the District of South Carolina, at Anderson.
William M. Catoe, Jr., Magistrate Judge.
(CA-97-1935-8-13AK)

Submitted: March 9, 1999

Decided: March 22, 1999

Before LUTTIG, MOTZ, and KING, Circuit Judges.

_____

Affirmed by unpublished per curiam opinion.

_____

**COUNSEL**

Stephen John Henry, Greenville, South Carolina, for Appellant.
Thomas A. Bright, HAYNESWORTH, BALDWIN, JOHNSON &
GREAVES, L.L.C., Greenville, South Carolina, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Dr. Haile M. Larebo appeals the magistrate judge's order and judgment granting summary judgment to the Appellee, Clemson University ("Clemson"), and dismissing his employment discrimination complaint.[1] In June 1997, Larebo, a black citizen of the United Kingdom and native of Ethiopia, filed a complaint under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2 (1994) ("Title VII"), alleging that he was denied tenure and reappointment in April 1996 because of his race and national origin.[2] Clemson contended that Larebo was not offered tenure or reappointment due to problems with his ability to teach. Finding no reversible error, we affirm.

Larebo has a Ph.D. in history from the University of London. In March 1991, he accepted a tenure track appointment as assistant professor in the Department of History at Clemson. The appointment was for one year and could be renewed only at Clemson's discretion in accordance with guidelines established in the Faculty Manual. The probationary period for a tenure-track professor was seven years. Thus, assuming that Larebo was reappointed each year during the probationary period, the decision whether to grant tenure to him was to be made during the 1996-97 academic year.

A peer review committee composed of all tenured associate and full professors conducted annual reviews of Department of History faculty members who, like Larebo, were eligible for reappointment. The committee made the initial recommendation regarding reappointment. The recommendation was forwarded to the department head, who made a separate recommendation. The recommendations of both the committee and the department head were forwarded to the appro-

_____

[1] This case was decided by a magistrate judge exercising jurisdiction upon consent of the parties under 28 U.S.C.A. § 636(c)(1) (West 1993 & Supp. 1998).

[2] Larebo's complaint also included a claim under 42 U.S.C.A. § 1983 (West Supp. 1998), which was dismissed by the magistrate judge along with the Title VII allegation. On appeal, Larebo states that he does not challenge the dismissal of the § 1983 claim.

priate dean. The dean rendered a separate recommendation to the Provost. The Provost reviewed the file and forwarded a recommendation to the university's president, who made the final decision.

The Department of History bylaws list the criteria by which personnel decisions regarding reappointment and tenure will be determined. According to the bylaws, a professor's ability to teach "lies at the core of the professional duties." (J.A. at 134). Professors are also responsible for making original contributions to scholarship and creating opportunities for service to the department and the community.

In January 1992, Larebo was reappointed to his position for academic year 1992-93. The memorandum from Dean Waller informing Larebo of his reappointment made note of Larebo's scholarly accomplishments. The letter also noted that "[t]he area of concern has been the quality of your teaching as you adjust to an American educational environment. I am pleased with the progress made to date and encourage your continued efforts." (J.A. at 126).

In October 1992, the peer review committee recommended that Larebo be reappointed for academic year 1993-94. The memorandum recommending reappointment noted that Larebo had performed impressively in the area of scholarly research and worked diligently to improve his teaching skills. The memorandum also noted that the content of some of Larebo's lectures was uneven, and that he had difficulty communicating with students due to his pattern of speech and pronunciation. The memorandum encouraged Larebo to take affirmative action to improve in this area. Notably, the peer review committee observed that, "[u]ltimately, however,[Larebo] must improve his ability to speak American English if he is to reach his students." (J.A. at 214-15). David Nicholas, head of the department, agreed with the committee's recommendation, and emphasized in a memorandum to the dean that Larebo's teaching continued to be the major area of concern due to his pronunciation.

In February 1993, the peer review committee recommended that Larebo be reappointed for academic year 1994-95. The recommendation memorandum favorably noted that Larebo's monograph was to be published by Oxford University Press. It also noted that "problems of communication still remained" due to "Larebo's pattern of speech

3

and pronunciation." (J.A. at 217). Nicholas' memorandum concurring in the peer review committee's recommendation stated that "problems remain," but noted that Larebo was working diligently to overcome them. The memorandum concluded by stating that Larebo's "record to date in teaching and service and especially research and publication thus richly merit reappointment." (J.A. at 219-20). The dean's memorandum informing Larebo of his reappointment stated that there was "room for still further refinements" in his teaching skills. (J.A. at 221).

In February 1994, the peer review committee once again recommended that Larebo be reappointed. The committee's memorandum supporting his reappointment for the 1995-96 academic year applauded Larebo for his scholarly achievements, but also noted that despite improvements, his "most serious problem lie in the area of teaching." (J.A. at 232). The committee encouraged him to continue to improve his teaching skills.

Nicholas' memorandum concurred with the committee's recommendation, but concluded that Larebo's teaching skill was at "the lower end of the Very Good category." (J.A. at 230). According to Nicholas, he received numerous complaints from students about Larebo's accent during Larebo's first year of teaching but that he had not heard any similar student complaints during the current academic year.

In February 1995, the peer review committee found that Larebo needed further improvement in the area of teaching, but nonetheless recommended that he be reappointed for academic year 1996-97. According to the committee, Larebo continued to have communication problems, and the clarity with which he presented material needed improvement, although his speech patterns were becoming easier to understand.

In his concurring memorandum, Nicholas noted that he received a number of student complaints suggesting a problem with Larebo's communication. Nicholas also noted that Larebo needed to be more attentive to matters of academic organization. Finally, Nicholas stated that Larebo "clearly has the knowledge to be a fine teacher, but he has problems communicating that knowledge to American students. He

4

must become better organized and impart to his students a clearer idea of what is expected of them." (J.A. at 121). The dean informed Larebo that he "must continue to work [on his teaching], particularly in communicating to students what is expected of them in clear and certain terms and in establishing a positive report[sic] with the [sic] your classes to facilitate the learning experience." (J.A. at 122).

In February 1996, the peer review committee recommended that Larebo not be reappointed for academic year 1997-98 because of his teaching. The decision to recommend not reappointing Larebo was unanimous, as were all the prior decisions recommending that he be reappointed. The committee noted that there was "little improvement" in Larebo's teaching since his initial appointment. (J.A. at 187). According to the committee, Larebo was unable to improve his organization, presentation, clarity, and communication. The committee excused its own prior favorable comments regarding Larebo's improvements in these areas by noting that they were written to encourage Larebo to improve.

The department's acting chair, Thomas Kuehn, concurred in the committee's recommendation. He stated that there was "insufficient improvement to warrant eventual tenure and that problems of communication go disturbingly far beyond accented speech." (J.A. at 184). Kuehn also noted that he had not previously seen such consistently negative student reaction and faculty peer evaluation reports. According to Kuehn, Larebo received the lowest teaching evaluation rating during the prior year. The dean, the provost, and the president agreed with the recommendations and Larebo was not offered tenure or reappointed.

During Larebo's employment at Clemson, fellow professors observed some of Larebo's lectures and prepared written evaluations. Nicholas observed Larebo in September 1991 and made note that his manner of speaking and his accent made him difficult to understand. Another professor noted, again after observing Larebo in September 1991, that "[t]he main problem area that Dr. Larebo has to work on is that of communication with students." (J.A. at 196). The same professor noted a vast improvement after observing Larebo in January 1992, but opined that Larebo "still has some distance to travel" with regard to his teaching ability. (J.A. at 197). Nicholas observed Larebo

5

in February 1992 and stated on a peer evaluation form that Larebo "especially [needed] to continue work on diction." (J.A. at 198). Subsequent peer evaluations noted that Larebo was constantly improving, but his teaching style remained problematic.

In addition to peer evaluations, department heads annually rated their professors on a scale of excellent, very good, good, fair, marginal or unsatisfactory. Larebo was annually rated either excellent or very good. The short narratives that accompanied the ratings always made note of Larebo's scholarly achievements but also noted that there was concern regarding his teaching ability.

Larebo filed a grievance with the university after he was denied tenure. The committee found that there was no evidence supporting his claim that he was discriminated against or treated differently than other professors. However, the committee recommended that Larebo be reappointed but denied tenure. The provost reviewed the recommendation and denied reappointment.

In granting summary judgment to Clemson, the magistrate judge assumed without deciding that Larebo had established a prima facie case of employment discrimination and found that Clemson offered a legitimate, non-discriminatory reason for not reappointing or offering tenure to Larebo, which Larebo was unable to show was pretextual.

Summary judgment is only appropriate when, viewing the evidence in the light most favorable to the nonmovant, there remains no genuine issue as to any material fact. See Fed. R. Civ. P. 56(c). We review the grant of summary judgment de novo. See Brown v. McLean, 159 F.3d 898, 904 (4th Cir. 1998).

Larebo's employment discrimination claim must be analyzed under the burden-shifting scheme set forth in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802-03 (1973). See St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506 (1993). To prevail, Larebo must establish a prima facie case by proving: (1) he is a member of a protected group; (2) he suffered some adverse employment action; (3) at the time of the adverse employment action, he was performing at a level that met his employer's legitimate expectations; and (4) the adverse

6

employment action occurred under circumstances that raise an inference of unlawful discrimination. See id. (citing Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 252-55 (1981)).

If Larebo establishes a prima facie case, the burden then shifts to Clemson to rebut the presumption of discrimination by articulating some legitimate, nondiscriminatory reason for the adverse employment action. See St. Mary's Honor Ctr., 509 U.S. at 506-07. If Clemson provides a legitimate, nondiscriminatory reason for the action, Larebo must show that the reason is false and that discrimination was the real reason for the adverse employment decision. See Vaughan v. MetraHealth Cos., 145 F.3d 197, 202 (4th Cir. 1998). The burden of persuasion remains with Larebo at all times. See St. Mary's Honor Ctr., 509 U.S. at 508, 518.

Like the magistrate judge, we will assume without deciding that Larebo established a prima facie case of employment discrimination. Larebo contends that he created an inference that Clemson's reason for declining reappointment or tenure was pretextual because it was not credible. He claims that according to Clemson's policy, if he was an inadequate teacher, he should have been denied reappointment earlier, prior to the year when he could be granted a tenure position. Larebo also argues that the overall positive evaluations from his peers and high ratings from the department head are inconsistent with the decision to deny reappointment. He claims that peer evaluations prepared during the year he was denied reappointment were uncharacteristically negative in order to set the groundwork for the subsequent adverse employment decision.

We do not "sit as a `super personnel council'" to review tenure decisions, Brousard-Norcross v. Augustana College Ass'n, 935 F.2d 974, 976 (8th Cir. 1991), and we will not interfere with a university's decision to deny tenure in order to impose our own judgment. See Jiminez v. Mary Washington College, 57 F.3d 369, 377 (4th Cir. 1995). Our review is narrow because tenure decisions involve the subjective and scholarly judgments of professionals and unless those judgments are used to hide discrimination, they must prevail. See id. When considering whether a decision to deny tenure was based on an unlawful reason, the plaintiff's evidence of pretext "must be of such strength and quality as to permit a reasonable finding that the denial

7

of tenure was obviously or manifestly unsupported." <u>Villanueva v. Wellesley College</u>, 930 F.2d 124, 129 (1st Cir. 1991) (citations and internal quotation omitted).

We find that Clemson offered a legitimate, nondiscriminatory reason for not reappointing or offering tenure to Larebo. A review of the various recommendations and evaluations confirms that Larebo was respected for his scholarship. Scholarship, however, is but one part of a professor's responsibilities and, according to the Department of History at Clemson, it is not the most important function. The department's bylaws state that teaching ability is the core of a professor's duties. From the very beginning of Larebo's employment, questions were raised regarding his ability to teach. It is well documented that several professors found that Larebo had problems with clarity and organization. Clearly, this is a legitimate reason for not reappointing a professor.

Larebo's challenge to Clemson's proffered reason is not persuasive. Larebo correctly points out that the record contains a significant number of positive remarks regarding his teaching ability recorded on various evaluation forms. But that does not necessarily support the inference that Clemson's proffered reason to deny tenure and reappointment was false. The extensive documentation evaluating Larebo's teaching ability supports the university's adverse employment decision. As to Larebo's claim that the evaluations and various recommendations were inconsistent with the adverse employment decision, the district court correctly found this argument unpersuasive. The evaluations consistently pointed out Larebo's teaching deficiencies. Insofar as peer evaluations allegedly took a more negative tone as it got closer to the tenure decision, it was not the kind of abrupt change in direction supporting an inference that his peers were manufacturing a reason to recommend denying tenure.

Larebo also contends that negative comments regarding his accent were motivated by discriminatory reasons. However, he fails to offer any support for this contention. Furthermore, he fails to consider that such references may reflect a permissible concern regarding his ability to communicate with students. <u>See Jiminez</u>, 57 F.3d at 300.

Furthermore, Larebo failed to offer any evidence that other similarly situated professors were treated differently. Larebo offered evi-

8

dence that another professor, a white male, received similar academic ratings and was granted tenure. That professor, however, was given high marks for his teaching ability.

We hold that Larebo failed to show that Clemson's reason for not offering him tenure or reappointment was false. He also failed to offer any evidence that the real reason for the adverse employment decision was discriminatory. Accordingly, we affirm the magistrate judge's order and judgment. We dispense with oral argument because the facts and legal contentions are adequately presented in the materials before the court and argument would not aid in the decisional process.

AFFIRMED

9